IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 8:11CR40 |
| v. | ) | |
| JENIFER TRINIDAD, JOSE OCHOA-CALDERON | ) | MEMORANDUM AND ORDER |
| Defendants. | ) | |

This matter is before the court on defendant Trinidad's objections to the Findings and Recommendations ("F&R") of the magistrate judge, Filing No. 71.

Defendants sought suppression of evidence seized by and statements made to Nebraska State Patrol officers conducting drug interdiction at the Greyhound Bus Depot in Omaha, Nebraska, on September 20, 2010. Filing No. 22 & Filing No. 28, motions to suppress. The magistrate judge recommended denial of the defendants' motions to suppress with respect to searches of the defendants' luggage and the defendants' statements, but recommended that evidence obtained from the defendants' cell phones should be suppressed. Filing No. 60, F&R; Filing No. 62, Transcript ("Tr.") at 51-68.

The magistrate judge first found that the initial contact with law enforcement officers was a consensual and voluntary encounter that did not implicate the Fourth Amendment. *Id.*, Tr. at 62. Further, he found that if the encounter was not consensual, the officers had a reasonable suspicion of criminal activity to justify a brief investigative detention. *Id.* at 63. Further, he found that defendant Trinidad was properly *Mirandized* and freely and voluntarily waived her *Miranda* rights and gave a statement. *Id.* at 64. Also, he found that

defendant Trinidad had abandoned the bag. *Id*. at 67. Last, he found that the bags had not been improperly seized because there was no delay occasioned by the incident. *Id*. at 68. Filing No. 48, Tr. of May 4, 2011, proceedings;

Defendant Trinidad objects to the magistrate judge's findings. She challenges the magistrate judge's credibility findings and contends the initial contact was not consensual. She further objects to the finding that she freely and voluntarily accompanied law enforcement officers to the baggage area and voluntarily chose to answer questions posed by the officers. Further, she challenges the magistrate judge's finding that there was no delay to the passengers or significant impact on their freedom of movement when officers blockaded the bus and required the passengers to answer questions regarding whether either of two bags belonged to them. The defendant also argues that the luggage at issue was not voluntarily abandoned for Fourth Amendment purposes because officers created an environment where passengers felt compelled to answer their questions and because officers failed to identify themselves during the questioning regarding ownership of the luggage.

Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the report and recommendations to which the parties object. *United States v. Lothridge*, 324 F. 3d 599, 600-01 (8th Cir. 2003). The court has conducted a careful de novo review of the entire record pursuant to 28 U.S.C. § 636(b)(1)(A), including the transcripts of the suppression hearings, Filing No. 48 and Filing No. 62.

## FACTS

The court accepts the factual findings of the magistrate judge and they will be repeated only as necessary to this opinion. *See* Filing No. 62 at 104-09. Briefly, the

2

evidence adduced at the hearing shows that the encounter occurred at the Greyhound bus station in Omaha during a scheduled stop for refueling and boarding new passengers. Filing No. 48, Tr. at 5-7. Three plain-clothed law enforcement officers were conducting drug interdiction at the bus station. *Id.* at 5. Officer Mark Eberle testified that, after the passengers disembarked, he examined the luggage in the compartment under the bus and noticed two pieces of luggage, one black and one gray, both destined for Elyria, Ohio, that had computer-generated baggage tags without handwriting and screws connecting the handle connection that appeared to have been tampered with. *Id*. at 8-10. He determined on examination of Greyhound's computerized ticketing information that the tickets for travel to Ohio had originated in Los Angeles and had been purchased with cash. *Id.* at 13-14, 20. Officer Jason Scott testified that he conducted an "abandonment process," whereby he placed the two bags at the door of the bus and asked each passenger reboarding the bus whether he or she owned the bag. Filing No. 62, Tr. at 12. No passenger claimed ownership of the bags, although Officer Scott testified that one woman hesitated when asked about it. Filing No. 62, Tr. at 14-15.

Officer Eberle testified that while Scott was talking to those passengers, Officer Eberle noticed a passenger, later identified as defendant Ochoa-Calderon, acting suspiciously. Filing No. 48, Tr. at 28. Officer Eberle approached the man, identified himself as a police officer, asked to see his ticket and identification, and questioned him about his travel plans. *Id.* at 28-29. Eberle then noticed that Ochoa was extremely nervous and found that his identification did not match the name on the bus ticket. *Id.* at 3–36. After Officer Scott returned and told Officer Eberle that no passenger had claimed the bags, the officers searched the black bag and found two kilos of cocaine. *Id.* at 40.

3

While the busdriver completed paperwork, the officers took both bags to a baggage room. *Id.* at 40-42. Officer Eberle testified that defendant Ochoa-Calderon agreed to accompany the officers to the room and agreed to answer a few questions. *Id*. at 43. Shortly thereafter, law enforcement officers determined from Greyhound manifests that a second person was also traveling to Elyria, Ohio. *Id*. Officer Scott and Officer Stephen Rasgorshek then reboarded the bus to "go look for a passenger who was possibly going to Elyria, Ohio." Filing No. 62, Tr. at 24. Officer Scott testified that he told Rasgorshek about the individual who had a "strong reaction" to the bag earlier. *Id*. at 17. Officer Rasgorshek testified that they "were going to be looking for a possible female, heavy set." *Id.* Rasgorshek testified he identified himself as a law enforcement officer, showed his credentials, informed the defendant that she was not in trouble nor under arrest, asked to see her ticket and identification. *Id*. at 27. He noticed that her identification did not match the name on her ticket, and then asked her to accompany him to the baggage room to answer a few questions. *Id*. at 27-28. She agreed to do so and followed the officers to the baggage room. *Id.* at 28. In the baggage room, she again denied that she owned either of the two bags. Filing No. 48, Tr. at 98. The officers then searched the second suitcase and found cocaine. *Id*. at 48-49. Defendant Trinidad gestured to Officer Eberle, indicating that she wanted to talk to him, and Eberle and the defendant went to a separate area. *Id*. at 49. Trinidad then began to volunteer information about the bags to Officer Eberle, at which time he stopped her and gave a *Miranda* warning. *Id*. at 49-50. The defendant waived her *Miranda* rights and continued to make several incriminating statements. *Id*. at 50-51. Officer Eberle testified that at that time the busdriver was still in the in the final

4

stage of calling passengers and that the episode at issue lasted no longer than thirty minutes. Filing No. 48, Tr. at 55.

## DISCUSSION

The court agrees with the magistrate judge's conclusion for the reasons stated in his opinion. The search of the luggage was proper because it had been abandoned. The defendant has not shown that the environment was so coercive as to amount to abandonment resulting form police misconduct. Any expectation of privacy in property "is forfeited upon its abandonment." *United States v. Voice*, 622 F.3d 870, 878 n.3 (8th Cir. 2010) (quoting *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997)). Whether property has been abandoned is a question of fact that turns primarily on whether the objective facts available to the investigating officers evidenced (i) the suspect's denial of ownership, and (ii) that he physically relinquished the property in a way that demonstrated abandonment. *Id.*

The court further agrees that the initial encounter with defendant Trinidad at the door of the bus was a consensual encounter, as was the questioning that occurred on the bus.[1] The government has presented evidence that defendant Trinidad had denied ownership of the luggage during that consensual encounter, long before she was asked to disembark from the bus. Further, the evidence shows that by the time she agreed to accompany the officers to the baggage room, the officers had information sufficient to amount to a reasonable suspicion of criminal activity so as to justify a brief investigative

---

[1]Although the court is inclined to believe that such questioning of passengers, especially that target at a specific passenger can be a detention, the Eighth Circuit Court of Appeals has ruled otherwise. *See United States v. Correa*, 641 F.3d 961 (8th Cir. 2011); *United States v. Perdoma*, 621 F. 3d 745, 749 (8th Cir. 2010).

detention. Drugs had been found in the black bag and there was evidence from the manifests that linked the defendant to the bag and/or its owner, defendant Ochoa-Calderon. Further, Trinidad had provided identification that did not match the name on her ticket. Under Eighth Circuit precedents, there is no evidence that would show that the defendant's actions were not voluntary. Accordingly,

IT IS ORDERED:

1. Defendant Trinidad's objection (Filing No. 71) to the Findings and Recommendation of the magistrate judge (Filing No. 60) is overruled.

2. The Findings and Recommendations of the magistrate judge (Filing No. 60) are adopted.

3. Defendant Trinidad's motion to suppress (Filing No. 28 ) is denied in part and granted in part.

4. Defendant Ochoa-Calderon's motion to suppress (Filing No. 22 ) is granted in part and denied in part.

DATED this 14th day of September, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.